## SOPHRONIA M. DAUGHERTY

*v.*

## ALEXANDER L. MONROE.

1. TRUST FUND—*whether it exists—set-off*. Where a party purchased a newspaper and printing establishment, and gave notes therefor, which by the terms of the contract were to be placed in the hands of a third party to collect, and apply the same to the payment of the debts of such printing establishment, *pro rata*, the notes so given became a trust fund for the payment of such debts, and the maker thereof could not, by the purchase of claims against such printing establishment, or otherwise, prevent the creditors from sharing *pro rata* in that fund.

2. But a note given by the same party, at a subsequent time, for the purchase of the subscription list of such newspaper, which was delivered to the payee, and no agreement made as to what purpose said note or the proceeds thereof were to be applied, will not become a trust fund, and there is no reason why the maker thereof may not purchase outstanding notes of such payee, and set them off in a suit brought by them upon such note.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. H. W. TAYLOR, for the appellant.

Mr. N. C. WARNER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a decree rendered in the circuit court of Winnebago county, enjoining appellant from using certain notes held by her, as a set-off against the "Rockford Register Co.," in an action at law instituted by the latter against appellant. to enforce the collection of a certain note of $900, which appellant had given to the company.

A brief statement of facts is necessary, in order to arrive at a correct understanding of the rights of the parties.

It appears from the record that, on the 4th day of September, 1871. Sophronia M. Daugherty, appellant, recovered a judgment for a large sum of money against the " Rockford Register Co.," and that on the same day, by and with the consent of the stockholders, she entered into a contract in writing with the company, by which she purchased the "Rockford Register" newspaper and printing establishment for the sum of $9000, which was to be paid in the following manner: The judgment was first to be deducted from the amount of the purchase, and the balance was to be paid in six and nine months, with interest. This balance amounted to something over $3000, for which appellant gave her notes— when paid, to be disposed of according to a provision in the agreement, which was in the words following: "It is also understood and agreed that all sums to be paid by Mrs. Daugherty are to be used, first, in the payment of the debts of said company, which are to be paid *pro rata,* and if any surplus then remains, the same is to go to the stockholders or their legal or equitable assigns."

These notes were placed in the hands of Robert P. Lane,

who was selected by the parties to hold the papers, collect the money and apply it *pro rata* between the creditors.

Subsequent to the purchase by appellant, and on the 10th day of November, 1871, she made another contract with the "Rockford Register Co.," by which she purchased the debts due the company on the subscription list of the "Rockford Register" newspaper, for which she gave $1025, $125 of which was paid in rent the company owed her after she purchased the office, and for the balance of $900 she gave the company her note, payable one-half in twelve and the other half in eighteen months.

At the time of the sale made by the company to appellant, it was largely indebted to various persons. Among the creditors appellee held a note for $1000, given in 1869, due in three years. The payment of this note was guaranteed by Albert Fowler and E. H. Griggs, who were officers and stockholders in the company.

Appellant paid to Lane the two notes she gave under the first contract, and Lane made a dividend among the creditors, paying seventy-three cents on the dollar upon all the claims within his knowledge.

Before the dividend was declared, appellant purchased several of the outstanding debts of the company, and received thereon a *pro rata* share with the other creditors.

Appellee gave no notice to Lane of his debt against the company, and it does not appear that Lane had any knowledge of its existence, and hence nothing was paid upon it. After the dividend had been paid, the company instituted an action at law against appellant, upon the $900 note which she had given for the claims due on the subscription list of the company. In defense to the action, appellant pleaded as a set-off the notes which she had purchased against the company, upon which she had received the dividend of seventy-three cents on the dollar, of Lane.

To enjoin appellant from interposing the defense to the action at law, appellee filed this bill. On the hearing the

court decreed substantially as prayed for in the bill, to reverse which appellant brings the record here by appeal.

It is claimed by appellee that the $900 note is a trust fund, made so by the agreement of appellant and the "Register Company," and that an equitable lien was created in favor of all the creditors upon this fund. Whether the $900 note was made a trust fund, must be determined by the contract made between the parties.

It is clear that, under the written contract of Sept. 4, 1871, the proceeds of the sale of the "Rockford Register" newspaper and printing establishment, after deducting the amount of appellant's judgment, was, by contract, created a trust fund, to be divided *pro rata* between the creditors, and appellant could not, by the purchase of claims or otherwise, prevent the creditors from sharing *pro rata* in that fund.

But the $900 note was no part of the proceeds of that purchase. It is the contract of September 4 that provides for the proceeds of the sale of certain property to be placed in the hands of a trustee. At that time the $900 note was not in existence, or within the contemplation of any of the parties, and when a subsequent trade was made, on the 10th day of November, 1871, between appellant and the company, by which she gave the note, it was no part of the agreement that the note then given should go to the creditors. or the proceeds thereof should be used in the payment of the indebtedness of the company.

This note was not placed in the hands of the trustee, as were the notes given under the first contract, but it was held and controlled by the company for its own benefit, to be used in any manner it saw proper. The $900 note is not included in or made a trust fund by the contract of September 4. It was not made a trust fund by the subsequent contract, nor is there any evidence in the record showing that any contract or agreement was at any time made under which it was to be regarded as a trust fund.

Under such circumstances, we fail to perceive upon what

principle appellee, a creditor of the company, without judg-
ment, can claim an equitable lien upon the proceeds of the
note, and assume to direct and control the disposition of the
same by a proceeding in chancery.

It is however said, when Lane, the trustee, paid the cred-
itors of the company seventy-three cents on the dollar on
their claims, such was a payment in full of each claim, and
it was his duty to have taken them up and canceled them.

It is a complete answer, however, to this, that the contract
of the company and appellant, under which this fund was
created, did not provide that the money the trustee should
pay to the creditors should be accepted by the creditors in
full of their several claims. Such was no part of the con-
tract. Neither did the creditors accept the money under an
agreement or understanding that the amount they received
should be regarded as a payment in full.

It does not appear that appellant was guilty of fraud or
any unfair means in the purchase of the claims she obtained
against the company.

She was indebted to the company in the sum of $900, upon
a note that, by its terms, was not negotiable. As no creditor
had any specific lien upon this debt, she had the undoubted
right to purchase notes against the company, and when suit
was instituted by the company against her, she had the clear
and undisputed right to use the notes so purchased as a set-
off against the note she had given to the company.

It may seem that it is a hardship upon appellee that he re-
ceived no portion of the trust fund upon his debt.

We understand from the record that he relies upon the
guarantors upon his note ; that this bill was not brought for
his benefit, but in his name for their benefit; and while it
may be true that appellee had no knowledge of the existence
of the trust fund, and hence did not apply to participate
therein, yet the guarantors of his note, for whose benefit this
bill was brought, had full knowledge of the trust fund, and
if they suffer a loss by not sharing with the other creditors,

it is through their own negligence, as they could easily have notified Lane, the trustee, of the existence of appellee's note. This they failed to do, and if in consequence they suffer a loss, they alone are to blame.

The decree will be reversed, and the cause remanded to be disposed of according to the views here expressed.

*Decree reversed.*